# Exhibit A

KEVIN T. SWEENEY
1250 15th Street West, Ste. 202
Billings, MT 59102
Telephone: 406-256-8060
Facsimile: 406-254-8448
ktsweeney@hotmail.com

*Attorney for Plaintiff*

MONTANA THIRTEENTH JUDICIAL DISTRICT COURT, YELLOWSTONE COUNTY

| | |
|---|---|
| JAMES P. HEALOW, | CAUSE NO. DV 17-1250 |
| Plaintiff, | JUDGE MICHAEL G. MOSES |
| vs. | |
| VOLKSWAGEN GROUP OF AMERICA, INC., ROBERT BOSCH GMBH, ROBERT BOSCH, LLC | **AMENDED COMPLAINT** (Montana State Law Claims Only) |
| Defendant. | |

Plaintiff alleges as follows:

1. Since at least 2009, Defendant Volkswagen Group of America (VW) intentionally violated the laws of the United States and the regulations of the United States Environmental Protection Agency (EPA) by selling automobiles in the United States that had a sophisticated software algorithm in the engine control module. The purpose of the software algorithm, defined in the Clean Air Act as a "defeat device," was to detect when a car's engine was being tested for compliance with

emissions standards, and switch the car to an operating mode that would enable the car to appear to pass vehicle emissions standards. At all times other than in emissions testing mode, the engine control module would suppress emission controls and switch the car's operating mode to emit up to forty times the quantity of nitrogen oxides allowed by federal emissions standards.

2. Nitrogen oxides are highly reactive gases that contribute to ground-level ozone, fine particulate, and nitrogen dioxide pollution. Exposure to these pollutants is a recognized cause of respiratory illnesses.

3. The EPA has established regulations with strict emissions standards, and every vehicle sold in the United States must meet these emissions standards to help control air pollution.

4. On September 18, 2015, the EPA sent VW a Notice of Violation informing VW that the EPA had discovered the defeat device in 2.0 liter diesel engines in at least the following diesel models of VW's vehicles (the "Violating Vehicles"): 2009-2015 VW Jetta; 2009-2015 VW Beetle; 2009-2015 VW Golf; 2014-2015 VW Passat; and 2009-2015 Audi A3.

5. Discovery may reveal that additional vehicle models and model years are properly included as Violating Vehicles.

6. Since VW introduced its 2.0L TDI Clean Diesel engine in 2008, VW has touted it as a "fantastic power train" that "gives very good fuel economy" that "is also good for the environment because it puts 25% less greenhouse gas emissions than what a gasoline engine would, . . . cuts out the particulate emissions by 90% and

the emissions of nitrous oxide are cut by 95%, . . . [and is] clean enough to be certified in all 50 states." (Statement of Volkswagen Group of America, Inc.'s Chief Operating Officer Mark Barnes, to *The Business Insider*, October 9, 2009.)

7. Mark Barnes did not add that the VW clean diesel vehicles were engineered to be able to detect when they were being tested and to switch the manner in which the emissions system operated to be able to achieve those reductions in nitrogen oxides. Mark Barnes also did not disclose was that, after circumventing the emissions laws of the United States, every one of VW's clean diesel vehicles' emissions systems were programmed to run in a model that would result in up to 40 times the allowable quantities of nitrogen oxides being released into the atmosphere under normal operating conditions.

8. VW relied on this fraud to position itself as the market leader in automotive diesel sales in the United States. According to VW's documents, VW had captured 78% of the automotive diesel sales in the United States by 2013.

9. VW also charged a premium for its Violating Vehicles, which VW marketed as "CleanDiesel." The 2015 Jetta base S model has a MSRP of $18,780, for example, while the 2015 Jetta TDI S CleanDiesel model has a MSRP of $21,640, a premium of $2860.

10. VW's unlawfully fraudulent and unfair trade practices are detailed with greater detail and specificity in the complaint filed in the Amended Consolidated Consumer Class Action Complaint on file in U. S. District Court, Northern District of California, San Francisco Division Case No. MDL 2672 CRB (JSC), which by this reference is

incorporated herein. The complaint may be found online at this link: https://www.boschvwsettlement.com/Content/Documents/Consolidated%20Consumer%20Complaint.pdf

11. The EPA has directed VW to recall all the Violating Vehicles and repair them to comply with emissions standards. The repair will cause substantial changes in performance and efficiency in the Violating Vehicles, thus Plaintiffs' vehicles will no longer perform as they did when purchased and as advertised.

12. ROBERT BOSCH GMBH, ROBERT BOSCH, LLC were complicit in all ov VW's actions described in this amended complaint.

## JURISDICTION AND VENUE

13. Jurisdiction is proper in this Court because Plaintiff seeks not more than $75,000 in damages (inclusive of costs and attorney's fees). All claims are based exclusively in Montana law. Plaintiff makes no federal law claims whatsoever.

14. Regarding the class litigation described below, VW notified Plaintiff by email, attached hereto as Exhibit 1, that his 2013 vehicle described below is not an eligible vehicle in the class and that "You are not a member of the class . . .". Plaintiff's 2010 vehicle is not eligible by express exclusion set forth in settlement ¶2.16(c)(i). Any effort by VW to remove or consolidate this case into the class action will be a violation of Rule 11, MRCivP and of its counterpart federal rule.

15. Venue is proper in this Court because Plaintiff is a resident of Yellowstone County and Defendants have sold Violating Vehicles and components thereof in Yellowstone County.

## PARTIES

16. Plaintiffs James P. Healow is a citizen of Montana and resident of Billings, Yellowstone County, Montana who purchased at various times five different violating vehicle Volkswagen Jettas. The two vehicles pertinent to this action are:

    (a) a 2013 Volkswagen Jetta TDI diesel sedan VIN 3VWLL7AJ6DM225060, was purchased through Copart in Billings, Montana, on October 5, 2015; and

    (b) a 2010 Volkswagen Jetta TDI diesel sedan VIN 3VWRL7AJ4AM027406, was purchased through Copart in Billings, Montana, on October 5, 2015.

    Neither of the two vehicles are eligible vehicles as defined in the class settlement. Plaintiff is not an eligible class member with respect to either vehicle.

17. Plaintiff purchased all his Volkswagen Jetta TDI vehicles, in part, because of the "CleanDiesel" system as advertised by VW that touted the cleanliness of the engine system for the environment and the efficiency and power and performance of the engine system.

18. Defendant Volkswagen Group of America, Inc. is a New Jersey corporation with its principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171. At all times relevant to this lawsuit, VW manufactured, distributed, sold, leased, and warranted the Violating Vehicles under the

AMENDED COMPLAINT                                                           PAGE 5 OF 14

Volkswagen and Audi brand names in the Montana. VW and/or its agents designed, manufactured, and installed the CleanDiesel engine system in the Violating Vehicles. VW's corporate parent is Volkswagen Aktiengesellschaft, based in Wolfsburg, Niedersachsen, Federal Republic of Germany.

19. Defendants ROBERT BOSCH GMBH and ROBERT BOSCH, LLC are foreign corporations not registered to do business in Montana, but which does business in Montana as described in the preceding ¶14.

## TOLLING AND ESTOPPEL

20. Any applicable statute of limitation has been tolled by VW's knowledge, active concealment, and denial of the facts alleged in this Complaint. Plaintiff could not have reasonably discovered the true, defective nature of the Violating Vehicles until a reasonable time after the EPA issued its notice of violation to VW. VW is further estopped from relying on any statute of limitation because of its concealment of the defective nature of the Violating Vehicles and their engines.

## CLAIMS

### Count One
### Fraud by Concealment (Montana state law)

21. Plaintiff incorporates by reference all preceding paragraphs.

22. The nondisclosure, misrepresentations, and/or concealment of material facts by VW to Plaintiffs, as set forth above, were known, or through reasonable care should have been known, by VW to be false and material and were intended by VW to mislead Plaintiff.

23. VW intentionally concealed and suppressed material facts concerning the quality

of the Violating Vehicles.

24. VW engaged in a secret scheme to evade federal vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog. The software installed on the vehicles at issue was designed nefariously to engage during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what VW intended: vehicles passed emissions certifications by way of deliberately induced false readings. Apparently, VW's deliberate, secret scheme resulted in noxious emissions from these vehicles at 40 times applicable standards.

25. Plaintiff reasonably relied upon VW's false representations. Plaintiff had no way of knowing that VW's representations were false and misleading. VW's defeat device was a sophisticated software algorithm, and Plaintiff could not detect VW's deception.

26. VW had a duty to disclose these safety, quality, functionality, and reliability issues because it consistently marketed its Violating Vehicles as possessing certain performance and fuel economy characteristics and as being in compliance with all applicable federal and state emissions standards. VW marketed the Violating Vehicles as being "CleanDiesel." Once VW made representations to the public about safety, quality, functionality, and reliability, as well as about the performance and fuel economy characteristics of the "CleanDiesel" vehicles in particular, VW was under a duty to disclose these

omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

27. VW had a duty to disclose the emissions scheme it engaged in with respect to the Violating Vehicles because knowledge of the scheme and its details were known and/or accessible only to VW, because VW had exclusive knowledge as to implementation and maintenance of its scheme, and because VW knew the facts were not known to or reasonably discoverable by Plaintiff.

28. These concealed and omitted facts were material because they directly impact the safety, quality, functionality, reliability, and value of the Violating Vehicles. Moreover, concealed and omitted facts were material because they directly impact the value of the Violating Vehicles. Whether a vehicle conforms to emissions standards and whether an automobile manufacturer tells the truth about compliance with emissions standards are material concerns to a consumer.

29. VW actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff to purchase or lease Violating Vehicles at a higher price that did not reflect the Violating Vehicles' true value, and to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt VW's image and cost VW money, and it did so at Plaintiff's

expense.

30. Plaintiff was unaware of these omitted material facts that were actively concealed and/or suppressed, in whole or in part, by VW with the intent to induce Plaintiff to purchase or lease the Violating Vehicles at a higher price that did not reflect the Violating Vehicles' true value.

31. If Plaintiff had known of these concealed and/or suppressed material facts, he would not have acted as he did, in that he would not have purchased purportedly "clean" diesel cars manufactured by VW, and/or would not have continued to drive their heavily-polluting vehicles, or would have taken other affirmative steps in light of the information concealed from him. Plaintiff's actions were justified. VW was in exclusive control of the material facts, and such facts were not known to the public or to Plaintiff.

32. As a result of VW's conduct, Plaintiff has been damaged because the value of his Violating Vehicles has diminished as a result of VW's fraudulent concealment of its scheme to circumvent federal emissions standards, which has harmed the Volkswagen and Audi brand names associated with the Violating Vehicles.

33. Furthermore, based on information and belief, Plaintiff anticipates that if and when VW is compelled to bring the Violating Vehicles into compliance with federal emissions standards, as indicated by the EPA Notice of Violation, the Violating Vehicles will no longer possess the performance and/or fuel economy characteristics they were represented to possess at the time of sale.

34. VW wantonly, maliciously, oppressively deliberately, with intent to defraud, and in

reckless disregard of Plaintiff's rights engaged in a systematic and intentional scheme to defraud consumers and federal regulators by circumventing the laws of the United States, and the state of Montana, by designing a defeat device in the form of a software algorithm whose sole purpose was to make it appear that the Violating Vehicles complied with federal and state emissions standards when, in fact, they exceeded such standards by as much as 40 times. In perpetrating this scheme, VW was able to secure a 78% share of the automotive diesel market in the United States by representing their "clean diesel" vehicles to have performance and fuel economy characteristics that would not be possible if the Violating Vehicles complied with federal and state emissions standards, not to mention taking market share away from electric cars and cleaner burning hybrid and gasoline combustion cars by this fraud.

35. Based on information and belief, VW engaged in a course of conduct to ensure that employees, dealers, and agents did not reveal this scheme to regulators or consumers in order to facilitate its fraudulent scheme and enhance VW's reputation and that of the Violating Vehicles in order to sell more vehicles and to sell those vehicles at an inflated price.

36. Plaintiff purchased his non-eligible 2013 vehicle pertinent to this action through Copart in Billings on October 5, 2015, 17 days after the EPA first issued to VW a notice of violation regarding the matter, and 15 short days after VW made its first public admission of wrongdoing. Plaintiff did not know the pertinent facts which VW had fraudulently concealed on October 5, 2015 when he bought his violating

vehicle. Montana law allows plaintiff two years, until September 17, 2017, to discover VW's fraudulent behavior. VW subsequently was a defendant in a multi-district class action lawsuit filed on behalf of purchasers and owners of violating vehicles. VW settled that lawsuit with members of the settlement class being persons who owned violating vehicles prior to issuance of the EPA notice of violation. VW acted in bad faith and with malice toward plaintiff by excluding him from the class for no other reason than his inability to discover VW's fraud and duplicity even more quickly than the U.S. government agency charged with regulating VW was able to discover that fraud and duplicity.

37. Planitiff purchased his non-eligible 2010 vehicle through IAAI in Billings on 11/26/2014, well before VW's fraud was exposed. Plaintiff bought the vehicle as a project car. By the time the vehicle was potentially roadworthy, VW's fraud was well-documented, including the fact that violating vehicles pollute at up to 40 times the legally allowable rate. Per ¶2.16(c)(i), p.6, of the class settlement agreement plaintiff's 2010 vehicle has damage to its wiring harness causing in a lack of electricity to the fuel pump as a result of which the vehicle having been "not capable of being driven under the power of its own 2.0-liter TDI engine" at any time from the date plaintiff bought it to date. The vehicle's odometer reading was 93737 when bought by plaintiff on 11/26/14. The odometer reading was 93737 when the vehicle was registered on 8/23/2016, 93737 when title first issued on 9/2/2016, and the odometer remains 93737 on the date of this amended complaint—because the vehicle at all times has "not [been] capable of

being driven under the power of its own 2.0-liter TDI engine". The electrical problem could be repaired, but plaintiff has been unwilling to do so because he will not knowingly place such a heavily polluting vehicle into service. Montana law allows plaintiff two years, until September 17, 2017, to discover VW's fraudulent behavior. VW has for many months refused to process a claim related to plaintiff's 2010 vehicle, and come to the conclusion that the plaintiff and his 2010 vehicle is not class eligible, using as a sham pretense that the vehicle was not registered during the interim between its purchase and its titleing some 21 months later. VW has acted in bad faith and with malice toward plaintiff by attempting to stall its determination that the vehicle is not class eligible until after the statute of limitiation for the filing of this action has lapsed.

38. The class action settlement included a settlement matrix specifying the amounts of damages VW agreed to pay to owners of eligible violating vehicles. That matrix is *prima facie* evidence of the damages suffered by an owner of a violating vehicle. Per the settlement matrix, plaintiff's damages for the 2013 vehicle are $23,897, and his damages for the 2010 vehicle are $15,050.

39. A class action settlement in a related case against the Bosch defendants resulted in a settlement pursuant to which Bosch agreed to pay owers of eligible violating vehicles $350 per vehicle. That settlement is *prima facie* evidence of the damages the Bosch defendants caused plaintiff for each of his two ineligible violating vehicles.

40. Defendants' fraudulent and malicious conduct warrants an award of punitive and

exemplary damages in an amount to be proven at trial.

## Count Two
## Montana Consumer Protection Act §30-14-101 et seq. MCA

41. Plaintiff incorporates by reference all preceding paragraphs.

42. The deceptive acts and practices of VW in concealing the true nature of the Violating Vehicles, as described in this Complaint, violates the Montana Unfair Trade Practices and Consumer Protection Act of 1973.

43. Pursuant to §30-14-133 MCA plaintiff is entitled to treble damages and attorney fees.

**WHEREFORE**, Plaintiff demands judgment against VW as follows:

1. For damages from VW in the amount of $23,897 for his 2013 vehicle and $15050 for his 2010 vehicle;

2. For damages from the Bosch defendants in the amount of $350 per vehicle;

3. For trebling of damages the damages, provided however that the total amount awarded in this action not exceed $75000;

4. For exemplary and punitive damages for all defendants' fraudulent and malicious actions, provided however that the total amount awarded in this action not exceed $75000;

2. For an award of attorney's fees and costs as provided by any applicable provision of law, provided however that the total amount awarded in this action not exceed $75000.

3. For such other and further relief as the Court deems just and equitable,

provided however that such relief shall not result in a total amount awarded in this action exceeding $75000.

DATED this 6th day of September, 2017.

KEVIN T. SWEENEY
1250 15th St. West, Ste. 202
Billings, Montana 59102

ATTORNEY FOR PLAINTIFF

AMENDED COMPLAINT

PAGE 14 OF 14

Mail - jhealow@hotmail.com

4/14/2017

Outlook Mail

Search Mail and People

∧ Folders

Inbox          413
Junk Email     101
Drafts          58
Sent Items
Deleted Items    6
Archive

⊕ New | ⌄    ↶ Reply | ⌄    🗑 Delete    📁 Archive    Junk | ⌄    Sweep    Move to ⌄    Categories ⌄    ···

## VWGoA Online Claims Portal - Customer Ineligible

C    claims_noreply@vwgoa.com
     Today, 12:21 PM
     You ⌄

Dear JAMES PATRICK HEALOW:

Based on the documents and information you have provided as part of your claim with Reference No. 161798337, the 2.0-Liter Settlement Claims Program. The reason(s) for your ineligibility is described below.

- Vehicle acquired from salvage/junkyard – You are not a member of the class because your title was branded purchased your vehicle from a junkyard or salvage yard after September 18, 2015.

If you believe you are entitled to claim benefits under the 2.0-Liter Settlement Claims Program, you may appeal th Court-appointed Claims Review Committee. The Claims Review Committee is composed of one representative fro from Settlement Class Counsel and a Court-appointed "Neutral" who will be called upon to resolve disagreements other members, should they arise. To submit an appeal to the Claims Review Committee, you must send a written Review Committee, P.O. Box 214500, Auburn Hills, MI 48321 or crc@vwcourtsettlement.com.

Your request must include the following information:

- Claimant's name, address, telephone number, VIN of the affected vehicle and Claim Reference Number
- You must also include a brief statement explaining why you believe the ineligibility determination was in err

After your claim is received and reviewed by the Claims Review Committee, you will receive a final determination

---

This email is being sent from an account that does not receive replies. For questions or other issues related to the visit www.VWCourtSettlement.com or contact the Settlement Support Team at 1-844-98-CLAIM.

To ensure delivery to your inbox, add claims_noreply@vwgoa.com to your address book.




https://outlook.live.com/owa/?path=/mail/inbox/rp

EXHIBIT I