# Exhibit B

VIRGINIA:

IN THE CIRCUIT COURT FOR THE COUNTY OF FAIRFAX

| | |
|---|---|
| IN RE: VOLKSWAGEN "CLEAN DIESEL" LITIGATION | Coordinated Case No.: CL-2016-9917 |
| CARLOS CASTELLUCCI, Plaintiff, v. VOLKSWAGEN GROUP OF AMERICA, INC. f/k/a VOLKSWAGEN OF AMERICA, INC., Defendant. | Case No.: CL-2017-288 |

**DEFENDANT'S MOTION *IN LIMINE* NO. 4: TO EXCLUDE DAMAGES THEORY BASED ON THE ARGUMENT THAT PLAINTIFF'S VEHICLE WAS ILLEGAL TO OWN, OPERATE OR BUY AT THE MOMENT OF PURCHASE**

Pursuant to Rules 2:402 and 2:403, Defendant Volkswagen Group of America, Inc. ("VW America") moves this Court *in limine* to preclude Plaintiff from arguing, or presenting any damages-based theory based on the premise, that Plaintiff's vehicle was illegal to own, operate or purchase at the time he acquired it in April 2015.

## INTRODUCTION

Plaintiff has identified Robert Aftel as an expert in automobile valuation, who will apparently opine that Plaintiff's vehicle was worth only "salvage" value at the time of purchase. ((Pl.'s Desig. at 4 (Ex. A hereto); Pltfs. Varky/Wormley Desig. at 7-8 (incorporated by reference in Plaintiff's designation of expert witnesses) (Ex. B hereto).) Mr. Aftel bases this opinion on speculation that the federal government would have seized the vehicle from Plaintiff if the government had been aware of the existence of the defeat device in the vehicle at that time. (*Id.*; Pltfs. Varky/Wormley Desig. at 7-8.)

Any evidence or argument suggesting that Plaintiff's vehicle was illegal to own, operate or purchase at the time of sale should be excluded because it is purely speculative and unreliable. Any determination as to the legality of driving or selling a vehicle based on the existence of a defeat device installed by the vehicle's manufacturer could only be made by the U.S. Environmental Protection Agency ("EPA"), which has never declared that the vehicle was (or is) illegal to drive. In fact, the EPA has stated precisely the contrary.

## ARGUMENT

### A. Evidence or Argument Suggesting that the Vehicle Was Illegal to Own, Operate or Purchase Would Be Purely Speculative.

All of the facts contradict Plaintiff's "illegal to drive" theory, and any evidence or argument purportedly in support of that theory would be pure speculation and should therefore be excluded. *See Virginian Ry. Co. v. Andrews*, 118 Va. 482, 489 (1916) (speculative evidence

-1-

is inadmissible). When it issued its Notice of Violation on September 18, 2015, just four months after Plaintiff's vehicle purchase, the EPA issued a press release stating that drivers could continue to drive their vehicles legally: the defeat devices "do not present a safety hazard and the cars *remain legal to drive* and resell."[1] The EPA's statement that the vehicles *"remain[ed]"* legal to drive shows that the vehicles had also been legal to drive in the past, such as when Plaintiff purchased the vehicle.[2] Plaintiff himself followed this directive and continued to drive his vehicle—and still does. (Pl.'s Dep. at 166:6-21, 169:7-170:5 (Ex. C hereto).)

Consistent with EPA and CARB, this Court has already rejected the theory that a state could declare affected Volkswagen vehicles illegal to drive based on the vehicles' condition at the time of their initial sale to the public. (August 30, 2016 Letter Op. at 19.) The Court held that "[n]either the EPA nor Virginia has declared the vehicles to not be road worthy or otherwise illegal. Plaintiffs make no allegation or showing, other than pure speculation, that revocation is imminent." (August 30, 2016 Letter Op. at 19.)[3] Nothing supporting any supposed illegality has changed in the last year. In fact, Plaintiff recently registered his vehicle with the Florida Department of Highway Safety and Motor Vehicles, demonstrating that the vehicle is not "illegal" to own or operate in Florida even to this day. (*See* Vehicle Information Check for Pl.'s Vehicle (Ex. D hereto).) The Florida Department of Highway Safety and Motor Vehicles even registered the vehicle despite Plaintiff's failure to register for or receive the federally-approved fix for his vehicle's emissions issue.

---

[1] https://www.epa.gov/newsreleases/epa-california-notify-volkswagen-clean-air-act-violations-carmaker-allegedly-used (emphasis added).

[2] Similarly, the California Air Resources Board ("CARB") made clear when it issued its Notice of Violation that Plaintiff's vehicle *"remain[ed]* legal to drive and resell." https://www.arb.ca.gov/newsrel/newsrelease.php?id=757 (emphasis added).

[3] On August 7, 2017 the Supreme Court of Virginia denied related Plaintiffs' Petition for Certiorari for an interlocutory appeal of the Court's August 30, 2016 rulings.

Mr. Aftel identified no facts to support the contention that Plaintiff's vehicle was illegal to drive or that the federal government could or would have confiscated the vehicle had it known of the defeat device. (Ex. A, Pl.'s Desig. at "Robert Aftel Material Reviewed and/or Relied Upon in Formulating Opinions.") Similarly, Plaintiff's identified Stephen Charlton as an expert in "exhaust emission control and regulation." (*Id.* at 1-2.) Mr. Charlton, who worked for Cummins Engines when it paid the then-largest fines for defeat device issues, is not aware of any instance "in the history of defeat devices" in which a vehicle owner has had their vehicle "seized or taken away." (*Varky/Wormley* Charlton Dep. at 45:12-46:23 (Ex. E hereto).) "An expert's opinion which is neither based upon facts within his own knowledge nor established by other evidence is speculative and possesses no evidential value." *Gilbert v. Summers*, 240 Va. 155, 160 (1990).

### B. EPA Is the Sole Authority for Making Determinations Regarding Whether Plaintiff's Vehicle Was Legal to Drive.

Even if there were some evidentiary basis for Plaintiff's argument (and there is none), whether Plaintiff's car was legal/illegal to drive is not a question this Court or a Virginia jury can answer. The EPA is the sole authority on the matter.

Title II of the Clean Air Act ("CAA") grants the EPA plenary responsibility for every stage of emissions regulation for new motor vehicles, including: (1) establishing emissions standards; (2) certifying manufacturers' engine designs as conforming to those standards; and (3) enforcing compliance with those standards through statutorily prescribed remedies. *See* 42 U.S.C. § 7521(a)(1). The EPA has promulgated a comprehensive system of emissions requirements and enforcement for new motor vehicles. *See* 40 C.F.R. pt. 86. To sell a car in the United States, manufacturers must go through an arduous testing process and obtain an EPA "certificate of conformity." 42 U.S.C. § 7525.

Against this comprehensive regulatory and enforcement landscape, the CAA prohibits states from (i) adopting emissions requirements for new motor vehicles or (ii) enforcing the EPA's emissions standards. The preemption provision provides:

> No State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part.

42 U.S.C. § 7543(a); see, e.g., *Jackson v. Gen. Motors Corp.*, 770 F. Supp. 2d 570, 573 (S.D.N.Y. 2011) ("[I]t is crystal clear that, absent waiver, a state cannot promulgate its own emissions standards for vehicles—such regulations are expressly preempted by § 209(a) of the CAA.").[4] The EPA has exclusive authority to restrain and punish violations of its federal emission standards for new cars. See, e.g., *Jackson*, 770 F. Supp. 2d at 573. Moreover, this preemption extends to state regulation of motor vehicle emissions even after the initial sale if the state "target[s] the [engine] manufacturers' practice of producing diesel engines purportedly designed to skirt Federal emissions standards by producing excess NOx levels." *In re Detroit Diesel Corp. v. AG of New York*, 709 N.Y.S.2d 1, 8 (N.Y. App. Div. 2000).

Permitting a state court to pronounce cars illegal to own, operate, or purchase based on failure to comply with federal emissions standards at the time of sale conflicts with the EPA's exclusive enforcement authority and the CAA's express prohibition on state "enforce[ment]" of its standards. 42 U.S.C. § 7543(a). Indeed, this Court confirmed the CAA's preemption in its August 30, 2016 Letter Opinion. See August 30, 2016 Letter Op. at 19 ("[T]he CAA bars Virginia from attempting to enforce any standard relating to the control of emissions . . . .").)

---

[4] See also *Metropolitan Taxicab Board of Trade v. City of New York*, 633 F. Supp. 2d 83, 104 (S.D.N.Y. 2009) ("Congress preempted states—and their political subdivisions—from creating their own emissions standards for new vehicles because Congress was concerned about the possibility of 50 different standards applying to one vehicle that so easily moves across state lines."), aff'd, 615 F.3d 152 (2d Cir. 2010).

Permitting a state to enforce federal emissions standards the moment a vehicle passes to its first purchaser would defeat the CAA's preemption provision. *Allway Taxi, Inc. v. New York*, 340 F. Supp. 1120, 1124 (S.D.N.Y. 1972).

### C. VW America Would Be Prejudiced if Evidence and Argument on Plaintiff's "Illegality" Theory Were Admitted.

Even if evidence or argument that Plaintiff's vehicle was illegal to own, operate or purchase is not excluded as speculative and irrelevant, testimony and argument speculating that Plaintiff's vehicle was "illegal to drive" would serve no legitimate purpose. *See Thomas v. Commonwealth*, 44 Va. App. 741, 758 (2005) (evidence precluded where it would "lead[] to illegitimate inferences"). The "proofs or counterproofs" about this collateral issue would take an "inordinate amount of time" and require the jury to determine how the EPA would have hypothetically treated the legal status of Plaintiff's vehicle had the emissions issue been discovered in April 2015 rather than September 2015. *Clay v. Commonwealth*, 33 Va. App. 96, 107 (2000), *aff'd*, 262 Va. 253 (2001). Proof of this issue would require testimony from legal experts and even the EPA, which would be a time-consuming distraction for the jury.

### CONCLUSION

VW America respectfully requests that the Court grant its Motion and enter an Order excluding Plaintiff from arguing, or presenting any theory of damages based on the argument, that Plaintiff's vehicle was illegal to own, operate or purchase at the time Plaintiff acquired it.

Dated: October 13, 2017

Respectfully submitted,

VOLKSWAGEN GROUP OF AMERICA, INC.

Terrence M. Bagley, Esquire (VSB No. 22081)
Christopher E. Trible, Esquire (VSB No. 48847)
Kenneth W. Abrams, Esquire (VSB No. 78216)
McGuireWoods LLP