KEVIN T. SWEENEY
1250 15th Street West, Ste. 202
Billings, MT  59102
Telephone:  406-256-8060
Facsimile:  406-254-8448
*ktsweeney@hotmail.com*

*Attorney for Plaintiff*

CLERK OF THE
DISTRICT COURT
TERRY HALPIN

2017 AUG 22 PM 4 27

FILED

BY _____

DEPUTY

MONTANA THIRTEENTH JUDICIAL DISTRICT COURT, YELLOWSTONE COUNTY

JAMES P. HEALOW,

        Plaintiff,

vs.

VOLKSWAGEN GROUP OF AMERICA, INC.,

        Defendant.

CAUSE NO.    D V   1 7 - 1 2 5 0

JUDGE    Michael G. Moses

120/1414246

**COMPLAINT**

Plaintiff alleges as follows:

1.    Since at least 2009, Defendant Volkswagen Group of America (VW)

    intentionally violated the laws of the United States and the regulations of

    the United States Environmental Protection Agency (EPA) by selling

    automobiles in the United States that had a sophisticated software

    algorithm in the engine control module. The purpose of the software

algorithm, defined in the Clean Air Act as a "defeat device," was to detect when a car's engine was being tested for compliance with emissions standards, and switch the car to an operating mode that would enable the car to appear to pass vehicle emissions standards. At all times other than in emissions testing mode, the engine control module would suppress emission controls and switch the car's operating mode to emit up to forty times the quantity of nitrogen oxides allowed by federal emissions standards.

2.    Nitrogen oxides are highly reactive gases that contribute to ground-level ozone, fine particulate, and nitrogen dioxide pollution. Exposure to these pollutants is a recognized cause of respiratory illnesses.

3.    The EPA has established regulations with strict emissions standards, and every vehicle sold in the United States must meet these emissions standards to help control air pollution.

4.    On September 18, 2015, the EPA sent VW a Notice of Violation informing VW that the EPA had discovered the defeat device in 2.0 liter diesel engines in at least the following diesel models of VW's vehicles (the "Violating Vehicles"): 2009-2015 VW Jetta; 2009-2015 VW Beetle; 2009-2015 VW

Golf; 2014-2015 VW Passat; and 2009-2015 Audi A3.

5.   Discovery may reveal that additional vehicle models and model years are properly included as Violating Vehicles.

6.   Since VW introduced its 2.0L TDI Clean Diesel engine in 2008, VW has touted it as a "fantastic power train" that "gives very good fuel economy" that "is also good for the environment because it puts 25% less greenhouse gas emissions than what a gasoline engine would, . . . cuts out the particulate emissions by 90% and the emissions of nitrous oxide are cut by 95%, . . . [and is] clean enough to be certified in all 50 states." (Statement of Volkswagen Group of America, Inc.'s Chief Operating Officer Mark Barnes, to *The Business Insider*, October 9, 2009.)

7.   Mark Barnes did not add that the VW clean diesel vehicles were engineered to be able to detect when they were being tested and to switch the manner in which the emissions system operated to be able to achieve those reductions in nitrogen oxides. Mark Barnes also did not disclose was that, after circumventing the emissions laws of the United States, every one of VW's clean diesel vehicles' emissions systems were programmed to run in a model that would result in up to 40 times the allowable quantities of

nitrogen oxides being released into the atmosphere under normal operating conditions.

8. VW relied on this fraud to position itself as the market leader in automotive diesel sales in the United States. According to VW's documents, VW had captured 78% of the automotive diesel sales in the United States by 2013.

9. VW also charged a premium for its Violating Vehicles, which VW marketed as "CleanDiesel." The 2015 Jetta base S model has a MSRP of $18,780, for example, while the 2015 Jetta TDI S CleanDiesel model has a MSRP of $21,640, a premium of $2860.

10. VW's unlawfully fraudulent and unfair trade practices are detailed with greater detail and specificity in the complaint filed in the Amended Consolidated Consumer Class Action Complaint on file in U. S. District Court, Northern District of California, San Francisco Division Case No. MDL 2672 CRB (JSC), which by this reference is incorporated herein.   The complaint may be found online at this link:

https://www.boschvwsettlement.com/Content/Documents/Consolidated%20Consumer%20Complaint.pdf

11. The EPA has directed VW to recall all the Violating Vehicles and repair them

to comply with emissions standards. The repair will cause substantial changes in performance and efficiency in the Violating Vehicles, thus Plaintiffs' vehicles will no longer perform as they did when purchased and as advertised.

## JURISDICTION AND VENUE

12. Jurisdiction is proper in this Court because Plaintiff seeks not more than $75,000 in damages (inclusive of costs and attorney's fees) and all claims are based in Montana law.

13. Regarding the class litigation described below, VW notified Plaintiff by email, attached hereto as Exhibit 1, that his vehicle described below is not an eligible vehicle in the class and that "You are not a member of the class . . .". Any effort by VW to remove or consolidate this case into the class action will be a violation of Rule 11, MRCivP and of its counterpart federal rule.

14. Venue is proper in this Court because Plaintiff is a resident of Yellowstone County and VW has sold Violating Vehicles in Yellowstone County.

## PARTIES

15. Plaintiffs James P. Healow is a citizen of Montana and resident of Billings, Yellowstone County, Montana who purchased at various times five

different violating vehicle Volkswagen Jettas. The vehicle pertinent to this action is a 2013 Volkswagen Jetta TDI diesel sedan VIN 3VWLL7AJ6DM225060, was purchased through Copart in Billings, Montana, on October 5, 2015.

16. Plaintiff purchased all his Volkswagen Jetta TDI vehicles, in part, because of the "CleanDiesel" system as advertised by VW that touted the cleanliness of the engine system for the environment and the efficiency and power and performance of the engine system.

17. Defendant Volkswagen Group of America, Inc. is a New Jersey corporation with its principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171. At all times relevant to this lawsuit, VW manufactured, distributed, sold, leased, and warranted the Violating Vehicles under the Volkswagen and Audi brand names in the United States. VW and/or its agents designed, manufactured, and installed the CleanDiesel engine system in the Violating Vehicles. VW's corporate parent is Volkswagen Aktiengesellschaft, based in Wolfsburg, Niedersachsen, Federal Republic of Germany.

**TOLLING AND ESTOPPEL**

18.    Any applicable statute of limitation has been tolled by VW's knowledge,

active concealment, and denial of the facts alleged in this Complaint.

Plaintiff could not have reasonably discovered the true, defective nature of

the Violating Vehicles until a reasonable time after the EPA issued its notice

of violation to VW. VW is further estopped from relying on any statute of

limitation because of its concealment of the defective nature of the

Violating Vehicles and their engines.

**CLAIMS**

**Count One**

**Fraud by Concealment**

19.    Plaintiff incorporates by reference all preceding paragraphs.

20.    The nondisclosure, misrepresentations, and/or concealment of material

facts by VW to Plaintiffs, as set forth above, were known, or through

reasonable care should have been known, by VW to be false and material

and were intended by VW to mislead Plaintiff.

21.    VW intentionally concealed and suppressed material facts concerning the

quality of the Violating Vehicles.

22.    VW engaged in a secret scheme to evade federal vehicle emissions

standards by installing software designed to conceal its vehicles' emissions

of the pollutant nitrogen oxide, which contributes to the creation of ozone

and smog. The software installed on the vehicles at issue was designed

nefariously to engage during emissions certification testing, such that the

vehicles would show far lower emissions than when actually operating on

the road. The result was what VW intended: vehicles passed emissions

certifications by way of deliberately induced false readings. Apparently,

VW's deliberate, secret scheme resulted in noxious emissions from these

vehicles at 40 times applicable standards.

23.  Plaintiff reasonably relied upon VW's false representations. Plaintiff had no

way of knowing that VW's representations were false and misleading. VW's

defeat device was a sophisticated software algorithm, and Plaintiff could

not detect VW's deception.

24.  VW had a duty to disclose these safety, quality, functionality, and reliability

issues because it consistently marketed its Violating Vehicles as possessing

certain performance and fuel economy characteristics and as being in

compliance with all applicable federal and state emissions standards. VW

marketed the Violating Vehicles as being "CleanDiesel." Once VW made

representations to the public about safety, quality, functionality, and

reliability, as well as about the performance and fuel economy

characteristics of the "CleanDiesel" vehicles in particular, VW was under a

duty to disclose these omitted facts, because where one does speak one

must speak the whole truth and not conceal any facts which materially

qualify those facts stated. One who volunteers information must be

truthful, and the telling of a half-truth calculated to deceive is fraud.

25.    VW had a duty to disclose the emissions scheme it engaged in with respect

to the Violating Vehicles because knowledge of the scheme and its details

were known and/or accessible only to VW, because VW had exclusive

knowledge as to implementation and maintenance of its scheme, and

because VW knew the facts were not known to or reasonably discoverable

by Plaintiff.

26.    These concealed and omitted facts were material because they directly

impact the safety, quality, functionality, reliability, and value of the

Violating Vehicles. Moreover, concealed and omitted facts were material

because they directly impact the value of the Violating Vehicles. Whether a

vehicle conforms to emissions standards and whether an automobile

manufacturer tells the truth about compliance with emissions standards are material concerns to a consumer.

27.   VW actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff to purchase or lease Violating Vehicles at a higher price that did not reflect the Violating Vehicles' true value, and to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt VW's image and cost VW money, and it did so at Plaintiff's expense.

28.   Plaintiff was unaware of these omitted material facts that were actively concealed and/or suppressed, in whole or in part, by VW with the intent to induce Plaintiff to purchase or lease the Violating Vehicles at a higher price that did not reflect the Violating Vehicles' true value.

29.   If Plaintiff had known of these concealed and/or suppressed material facts, he would not have acted as he did, in that he would not have purchased purportedly "clean" diesel cars manufactured by VW, and/or would not have continued to drive their heavily-polluting vehicles, or would have taken other affirmative steps in light of the information concealed from

him. Plaintiff's actions were justified. VW was in exclusive control of the

material facts, and such facts were not known to the public or to Plaintiff.

30.   As a result of VW's conduct, Plaintiff has been damaged because the value

of his Violating Vehicle has diminished as a result of VW's fraudulent

concealment of its scheme to circumvent federal emissions standards,

which has harmed the Volkswagen and Audi brand names associated with

the Violating Vehicles.

31.   Furthermore, based on information and belief, Plaintiff anticipates that if

and when VW is compelled to bring the Violating Vehicles into compliance

with federal emissions standards, as indicated by the EPA Notice of

Violation, the Violating Vehicles will no longer possess the performance

and/or fuel economy characteristics they were represented to possess at

the time of sale.

32.   VW wantonly, maliciously, oppressively deliberately, with intent to defraud,

and in reckless disregard of Plaintiff's rights engaged in a systematic and

intentional scheme to defraud consumers and federal regulators by

circumventing the laws of the United States, and the state of Montana, by

designing a defeat device in the form of a software algorithm whose sole

purpose was to make it appear that the Violating Vehicles complied with federal and state emissions standards when, in fact, they exceeded such standards by as much as 40 times. In perpetrating this scheme, VW was able to secure a 78% share of the automotive diesel market in the United States by representing their "clean diesel" vehicles to have performance and fuel economy characteristics that would not be possible if the Violating Vehicles complied with federal and state emissions standards, not to mention taking market share away from electric cars and cleaner burning hybrid and gasoline combustion cars by this fraud.

33. Based on information and belief, VW engaged in a course of conduct to ensure that employees, dealers, and agents did not reveal this scheme to regulators or consumers in order to facilitate its fraudulent scheme and enhance VW's reputation and that of the Violating Vehicles in order to sell more vehicles and to sell those vehicles at an inflated price.

34. Plaintiff purchased the vehicle pertinent to this action on October 5, 2015, 17 days after the EPA first issued to VW a notice of violation regarding the matter, and 15 short days after VW made its first public admission of wrongdoing. Plaintiff did not know the pertinent facts which VW had

fraudulently concealed on October 5, 2015 when he bought his violating vehicle. Montana law would have allowed plaintiff two years, until September 17, 2017, to discover VW's fraudulent behavior. VW subsequently was a defendant in a multi-district class action lawsuit filed on behalf of purchasers and owners of violating vehicles. VW settled that lawsuit with members of the settlement class being persons who owned violating vehicles prior to issuance of the EPA notice of violation. VW acted in bad faith and with malice toward plaintiff by excluding him from the class for no other reason than his inability to discover VW's fraud and duplicity even more quickly than the U.S. government agency charged with regulating VW was able to discover that fraud and duplicity.

35. The class action settlement included a settlement matrix specifying the amounts of damages VW agreed to pay to owners of violating vehicles purchased 18 or more days before plaintiff bought his violating vehicle. That matrix is *prima facie* evidence of the damages suffered by an owner of a violating vehicle. Per the settlement matrix, plaintiff's damages are $23,897.

36. VW's conduct warrants an assessment of punitive damages in an amount

1  sufficient to deter such conduct in the future, which amount is to be

2  determined according to proof.

### Count Two

### Montana Consumer Protection Act §30-14-101 et seq. MCA

37.  Plaintiff incorporates by reference all preceding paragraphs.

38.  The deceptive acts and practices of VW in concealing the true nature of the

Violating Vehicles, as described in this Complaint, violates the Montana

Unfair Trade Practices and Consumer Protection Act of 1973.

39.  Pursuant to §30-14-133 MCA plaintiff is entitled to treble damages and

attorney fees.

**WHEREFORE**, Plaintiff demands judgment against VW as follows:

1.  For damages in the amount of  $23,897 and that the damages be

trebled to $71691;

2.  For exemplary and punitive damages for VW's fraudulent and

malicious actions, provided however that the total amount awarded

in this action not exceed $75000;

2.  For an award of attorney's fees and costs as provided by any

applicable provision of law, provided however that the total amount

DATED this 22nd day of August, 2017.

KEVIN T. SWEENEY
1250 15th St. West, Ste. 202
Billings, Montana  59102

ATTORNEY FOR PLAINTIFF

Outlook Mail

Search Mail and People 🔍

⊕ New | ⌄    ↩ Reply | ⌄    🗑 Delete    🗄 Archive    Junk | ⌄    Sweep    Move to ⌄    Categories ⌄    •••

∧ Folders

| | |
|---|---|
| Inbox | 413 |
| Junk Email | 101 |
| Drafts | 58 |
| Sent Items | |
| Deleted Items | 6 |
| Archive | |

## VWGoA Online Claims Portal - Customer Ineligible

C   claims_noreply@vwgoa.com
Today, 12:21 PM
You ⌄

Dear JAMES PATRICK HEALOW:

Based on the documents and information you have provided as part of your claim with Reference No. 161798337, the 2.0-Liter Settlement Claims Program. The reason(s) for your ineligibility is described below.

- Vehicle acquired from salvage/junkyard - You are not a member of the class because your title was branded purchased your vehicle from a junkyard or salvage yard after September 18, 2015.

If you believe you are entitled to claim benefits under the 2.0-Liter Settlement Claims Program, you may appeal th Court-appointed Claims Review Committee. The Claims Review Committee is composed of one representative fro from Settlement Class Counsel and a Court-appointed "Neutral" who will be called upon to resolve disagreements other members, should they arise. To submit an appeal to the Claims Review Committee, you must send a written Review Committee, P.O. Box 214500, Auburn Hills, MI 48321 or crc@vwcourtsettlement.com.

Your request must include the following information:

- Claimant's name, address, telephone number, VIN of the affected vehicle and Claim Reference Number
- You must also include a brief statement explaining why you believe the ineligibility determination was in err

After your claim is received and reviewed by the Claims Review Committee, you will receive a final determination a

-------------------------------------------------------------------------------------------------------------

This email is being sent from an account that does not receive replies. For questions or other issues related to the visit www.VWCourtSettlement.com or contact the Settlement Support Team at 1-844-98-CLAIM.

To ensure delivery to your inbox, add claims_noreply@vwgoa.com to your address book.

EXHIBIT I

✉ 📅 👥 ☑